Clayton E. GREENFIELD and Carmen
F. Greenfield, Petitioners-Appellants
Cross Appellees,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee
Cross Appellant.

Fred S. BUGG and Pauline C. Bugg,
Petitioners-Appellants Cross
Appellees,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee
Cross Appellant.

No. 74–1102.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1975.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Chief, Appellate Sec., Tax Div., Dept. of Justice, Washington, D. C., Meade Whitaker, Chief Counsel, Bobby D. Burns, Internal Revenue Service, Washington, D. C., Gary R. Allen, Atty., Robert G. Burt, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee cross appellant.

Eugene C. Heiman, Miami, Fla., for petitioners-appellants cross appellees.

Before BELL, AINSWORTH and RONEY, Circuit Judges.

BELL, Circuit Judge:

This suit arose after appellants Greenfield and Bugg were assessed $34,594.56 and $43,264 for claimed deficiencies with respect to 1964 income tax. The Commissioner grounded these assessments on two 1964 transactions which involved appellants and their wholly-owned corporations, Carline Electric Corporation ["Domestic"] and Carline, Ltd., ["Offshore"]. The Tax Court sustained the Commissioner's contention that the two transactions involved investments by a controlled foreign corporation in United States property resulting in pro rata inclusion in the gross incomes of the corporation's stockholders under Section 951(a) of the Internal Revenue Code of 1954.[1] As to one of the pertinent transactions, however, appellants were adjudged deficient in an amount less than that assessed.[2]

This appeal is from the Tax Court's determination of deficiency. The Commissioner cross-appeals as to the difference between the assessment and the deficiency found by the Tax Court. We affirm as to the appeal and cross-appeal.

Appellants each owned fifty per cent of the capital stock in Domestic, a Florida corporation, and Offshore, a controlled foreign corporation as defined in Section 957(a) of the Internal Revenue Code.[3] During the five-year period prior to 1964, the two corporations had a continuing business relationship. An open account was maintained on the books of each company as a record of intercompany transactions.

In 1964, Domestic was successful in its bid on an electrical contracting job at Key West, Florida. Pursuant to its bid, Domestic was required to obtain a performance bond, which it sought from the Travelers Insurance Company. Before issuing the bond, Travelers required that Domestic increase its paid-in capital by $100,000, and that $100,000 of the open account indebtedness currently owed by

---

1. Sec. 951. *Amounts Included In Gross Income Of United States Shareholders.*

   (a) Amounts Included.—

     (1) In General.—If a foreign corporation is a controlled foreign corporation for an uninterrupted period of 30 days or more during any taxable year beginning after December 31, 1962, every person who is a United States shareholder (as defined in subsection (b)) of such corporation and who owns (within the meaning of section 958(a)) stock in such corporation on the last day, in such year, on which such corporation is a controlled foreign corporation shall include in his gross income, for his taxable year in which or with which such taxable year of the corporation ends—

       *   *   *   *   *   *

   (B) his pro rata share (determined under section 956(a)(2)) of the corporation's increase in earnings invested in United States property for such year (but only to the extent not excluded from gross income under section 959(a)(2)).

       *   *   *   *   *   *

2. Clayton E. Greenfield, 1973, 60 T.C. 425.

3. Sec. 957. *Controlled Foreign Corporations; United States Persons.*

   (a) *General Rule.*—For purposes of this subpart, the term "controlled foreign corporation" means any foreign corporation of which more than 50 percent of the total combined voting power of all classes of stock entitled to vote is owned (within the meaning of section 958(a)), or is considered as owned by applying the rules of ownership of section 958(b), by United States shareholders on any day during the taxable year of such foreign corporation.

Domestic to Offshore be subordinated to Travelers' bond.

Domestic complied with the first requirement by authorizing the issuance of $50,000 worth of stock to each appellant ["Transaction I"]. To pay for the stock, $100,000 was funnelled from Offshore through appellants to Domestic. The Tax Court determined upon stipulation of the parties that this transaction was a direct loan from Offshore to Domestic. The Commissioner had contended that this transaction was, in substance, either a constructive dividend paid by Offshore to appellants or an "increase in earnings invested in United States property" by Offshore in 1964, and thus includible in appellants' gross incomes under IRC § 951(a)(1)(B). The Court sustained the Commissioner in the latter of these alternative arguments, and felt it unnecessary to resolve the former argument.

Appellants accomplished the subordination requirement of Travelers by, in effect, having Offshore subordinate the open account due it by Domestic ["Transaction II"]. This was done in a loose fashion. A note containing a subordination clause was prepared but never executed. The Tax Court apparently treated it as a memorandum of the subordination transaction, and as such, it explained the entries on the books of the respective corporations which were made in furtherance of the subordination.

The cross-appeal arises by virtue of the debt from Domestic to Offshore being only $94,129.53 on the date of the subordination, July 31, 1964, while Travelers required, and appellants provided, a subordination in the amount of $100,000.

It is important at this point to note that (1) the tax involved in Transaction II is not imposed upon the subordination agreement but upon the open account previously due Offshore by Domestic and (2) the $100,000 subordination was a sum selected to approximate the open account balance due Offshore at the time. This balance fluctuated, and the parties to the bond transaction elected the $100,000 figure as a convenience.

▌ Despite these facts, the Commissioner urges that a tax should be imposed according to the balance due on the open account, as was done, plus the overage between the open account due and the $100,000 subordination.[4] The Tax Court rejected this contention and we agree. This position is based wholly on form, rather than substance. Substance, and not form must be relied upon in determining the taxable significance of a transaction. Commissioner v. Court Holding Co., 1945, 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981, 985; Gregory v. Helvering, 1935, 293 U.S. 465, 470, 55 S.Ct. 266, 79 L.Ed. 596, 599; Holbrook v. Commissioner, 5 Cir., 1971, 450 F.2d 134, 141. The overage in question ($5,986) was a mere paper figure lacking reality.

We turn now to Transactions I and II from the standpoint of appellants' position as distinguished from the cross-appeal. The central issue before the Tax Court was whether these transactions constituted investments in "United States property" as defined in Section 956 of the Internal Revenue Code and accompanying Treasury Regulations.[5] Section 956(b) (1)(C) defines "United States property" to include "an obliga-

---

4. IRC § 951(a)(1)(B) imposes a tax on the increase in investment in United States property by the controlled foreign corporation during the taxable year. IRC § 956(b)(1) limits "United States property" to exclude property acquired prior to December 31, 1962. The Tax Court found, and the Commissioner does not dispute, that the open account reflected a balance of $64,056 in favor of Offshore on December 31, 1962. The Court subtracted this amount from $94,014 to compute Offshore's increase in investment during 1964.

5. Sec. 956. *Investment Of Earnings In United States Property.*

  \* \* \* \* \* \*

  (b) United States Property Defined.—
    (1) *In General.*—For purposes of subsection (a), the term "United States property" means any property acquired after December 31, 1962, which is—
      (A) tangible property located in the United States;
      (B) stock of a domestic corporation;
      (C) an obligation of a United States person; or

tion of a United States person." The court determined that both transactions fell within the obligation category of United States property, and that the three relevant exceptions within this category were inapplicable to the two transactions.[6]

The Tax Court's findings that these transactions were investments in obligations of a United States person, and that the three pertinent exceptions were inapplicable to both transactions, are essentially findings of fact, and are consequently not reversible unless clearly erroneous. *See* Commissioner v. Duberstein, 1960, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218, 1228; Estate of Broadhead v. Commissioner, 5 Cir., 1968, 391 F.2d 841, 843. Under this standard, and after a thorough review of the record, we are of the view that the result reached by the Tax Court is correct and that the cause is otherwise without prejudicial error.

Affirmed on the appeal and cross-appeal.

---

(D) any right to the use in the United States of—
(i) a patent or copyright,
(ii) an invention, model, or design (whether or not patented),
(iii) a secret formula or process, or
(iv) any other similar property right, which is acquired or developed by the controlled foreign corporation for use in the United States.

(2) *Exceptions.*—For purposes of subsection (a), the term "United States property" does not include—
(A) obligations of the United States, money, or deposits with persons carrying on the banking business;
(B) property located in the United States which is purchased in the United States for export to, or use in, foreign countries;
(C) any obligation of a United States person arising in connection with the sale or processing of property if the amount of such obligation outstanding at no time during the taxable year exceeds the amount which would be ordinary and necessary to carry on the trade or business of both the other party to the sale or processing transaction and the United States person had the sale or processing transaction been made between unrelated persons;
(D) any aircraft, railroad rolling stock, vessel, motor vehicle, or container used in the transportation of persons or property in foreign commerce and used predominantly outside the United States;
(E) an amount of assets of an insurance company equivalent to the un-

earned premiums or reserves ordinary and necessary for the proper conduct of its insurance business attributable to contracts which are not contracts described in section 953(a)(1); and
(F) an amount of assets of the controlled foreign corporation equal to the earnings and profits accumulated after December 31, 1962, and excluded from subpart F income under section 952(b).

\* \* \* \* \* \*

6. One exception to the term "obligation" that the Tax Court found inapplicable to these transactions is in IRC § 956(b)(2), which states that United States property does not include:
(C) any obligation of a United States person arising in connection with the sale or processing of property if the amount of such obligation outstanding at no time during the taxable year exceeds the amount which would be ordinary and necessary to carry on the trade or business of both the other party to the sale or processing transaction and the United States person had the sale or processing transaction been made between unrelated persons;
The other two inapplicable exceptions are located in Treasury Regulation § 1.956–2(d)(2)(ii), which excludes from the general definition of obligation any indebtedness which
(a) Is collected within one year from the time it is incurred, or
(b) Matures within one year from the time it is incurred but is not collected within such period solely by reason of the inability or unwillingness of the debtor to make payment within such period.